The Honorable Roy Ragland State Representative Post Office Box 610 Marshall, Arkansas 72650-0610
Dear Representative Ragland:
I am writing in response to your request for an opinion, on behalf of a local school superintendent, on whether a particular school district policy concerning contact with students by non-school personnel during school hours complies with law or whether it needs to be revised. Correspondence enclosed with your request notes that the school district "currently subscribes to the Arkansas School Board Association's policy service." Also enclosed with your request is the policy at issue, the pertinent portions of which provide as follows:
 Questioning of students by non-school personnel shall be granted only with a court order directing such questioning, with the permission of the parents of a student (or the student if above eighteen [18] years of age), or in response to a subpoena or arrest warrant. If the District makes a report to any law enforcement agency concerning student misconduct or if access to a student is granted to a law enforcement agency due to a court order, the principal or the principal's designee shall make a good faith effort to contact the student's parent, legal guardian, or other person having lawful control by court order, or person acting in loco parentis on student enrollment forms.
 Principals must release a student to either a police officer who present a subpoena for the student, or a warrant for arrest, or to an agent of the social services with a court order signed by a judge. Upon release of the student, the principal or designee shall give the student's parent, legal guardian, or other person having lawful control by court order, or other person acting in local parentis notice that the student has been taken into custody by law enforcement personnel or a social services agency. If the principal or designee is unable to reach the parent, he or she shall make a reasonable, good faith effort to get a message to the parent to call the principal or designee and leave both a day and an after hours telephone number.
Again, the question is whether this policy complies with law or whether it needs to be revised.
RESPONSE
I am not the school district's counsel and cannot give specific legal advice as to the policies it should adopt. I can state, however, that in my opinion the policy above is contrary to state law in at least two respects. I have set out some discussion of the relevant statutes and some recent statutory amendments below. The school district should confer with its chosen legal counsel, however, to ensure that its policies comply with law.
The two problematic portions of the policy involve the requiring of a court order before allowing the questioning of students and the apparent requiring of a court order from an "agent of the social services" prior to release of a student to that agent. The policy is problematic in these respects because it would require such court orders from authorized officials of the Department of Human Services ("DHS") investigating suspected child abuse and maltreatment. State law does not require court orders in such instances and has been recently amended to specifically state that no such court order is required prior to the release of a student to DHS pursuant to a "seventy-two hour hold."
Some historical background discussion may be helpful before setting out the current state law on the issue.
One of my predecessors addressed a similar issue regarding social worker access to students during school hours in Op. Att'y. Gen. 91-417, which you have also enclosed with your request. At issue was whether state statutes gave "social workers unlimited access to students" and whether such access superseded parental rights under certain federal law.[1] My predecessor set out the relevant statutory language at the time, found in A.C.A. § 12-12-510(a), which states that "[t]he person conducting the investigation shall have the right to enter into or upon the home, school, or other place for the purpose of conducting an interview or completing the investigation as required by this subchapter." My predecessor therefore concluded that: "[t]his statute clearly authorizes those charged with the duty to investigate reports of suspected child abuse to have access to students upon school property for purposes of conducting their interviews and investigations. Schools are thus not in a position to deny to social workers access to students for purposes of conducting these mandated investigations." Id. at 2-3.
In another opinion of the same Attorney General (Op. Att'y. Gen.92-350), it was concluded that a school did not need the permission of the parent(s) before allowing a social worker access to a child for the purpose of investigating suspected child abuse. My predecessor, after citing A.C.A. § 12-12-510, stated that "[t]his statutory scheme does not require school officials to get the permission of the parents prior to granting social workers access to the child. These social workers have the right by statute to interview the child on school premises. A.C.A. 12-12-510(a)." Id. at 2. More relevant to your question is the discussion my predecessor set out after this conclusion, as follows:
 It appears that the issue has arisen because at least some school officials have been advised by the attorney for the School Boards' Association to deny these social workers access to the child, and force the social worker to get a court order under A.C.A. 12-12-510(b) to enforce the right. It is the belief of such counsel that in this way the school officials would immunize themselves from potential liability to the child or parents under federal law.
* * *
 The School Boards Association's counsel is of course free to advise the schools in any manner he sees fit. It is my opinion, however, that school officials, if they pursue this course, are unnecessarily impeding the swift and effective action often necessary to prevent the abuse of children, and may in fact be exposing themselves to liability rather than immunizing themselves from it, if a child is injured due to the delay occasioned by the denial. It is my opinion that school officials, absent malice or improper motives, will not suffer any liability solely as a result of allowing social workers access to a child for the purpose of investigating suspected child abuse.
Id. at 2.
My predecessor thus concluded that state law afforded such social workers access to the student without a court order and that any potential for liability of the school district for allowing such access was remote, stating "[i]t is therefore unnecessary for school officials to force social workers to get a court order and delay what may be the critical need for investigation and intervention in child abuse cases." Id. at 5.[2]
You have presented a current school district policy, based presumably upon advice and assistance from the Arkansas School Boards Association, that requires a court order prior to the granting social workers access to students for questioning, or prior to the release of students to such persons. In my opinion the policy contravenes state law in these two respects.[3]
The relevant state law has been amended several times since the issuance of Ops. 91-417 and 92-350 described above. In pertinent part, the statutory amendments strengthen the conclusions reached in those opinions with regard to access to students by social workers at school. Specifically, § 12-12-510(a), authorizing child abuse investigators to "enter into or upon the home, school or any other place for the purpose of conducting and interviewing or completing the investigation . . ." was amended by Act 758 of 2003 to add a new subsection (a)(2), which states that: "No publicly supported school, facility, or institution may deny access to any person conducting a child maltreatment investigation." In addition, Section 11 of Act 1706 of 2005 (effective August 12, 2005),[4]
adds another new subsection ((a)(3)), to A.C.A. § 12-12-510. It provides that "[f]ailure to comply with this section may subject the school, facility or institution to contempt sanctions and reimbursement of attorney's fees." State law thus does not require a court order before child maltreatment investigators are allowed access to students. The policy therefore contravenes state law on this point.
With regard to the release of students to social workers, another statute in the same subchapter (A.C.A. § 12-12-516), is relevant. It currently provides in pertinent as follows:
 (a)(1) A police officer, a law enforcement official, a juvenile division of circuit court judge during juvenile proceedings concerning the child or siblings of the child, or a designated employee of the Department of Human Services may take a child into protective custody or any person in charge of a hospital or similar institution or any physician treating a child may keep that child in his or her custody without the consent of the parent or the guardian, whether or not additional medical treatment is required, if the:
(A) Child is dependent-neglected as defined in § 9-27-303(17);
 (B) Child is dependent as defined in the Arkansas Juvenile Code of 1989, § 9-27-301 et seq.; or
 (C) Circumstances or conditions of the child are such that continuing in his or her place of residence or in the care and custody of the parent, guardian, custodian, or caretaker presents an immediate danger of severe maltreatment.
 (2) However, such custody shall not exceed seventy-two (72) hours except in the event that the expiration of seventy-two (72) hours falls on a weekend or holiday, in which case protective custody may be extended through the next business day following the weekend or holiday.
 (b) The individual taking the child into protective custody may give effective consent for medical, dental, health, and hospital services during protective custody.
 (c) In any case in which protective custody is invoked, the individual taking the child into protective custody shall notify the department in order that a child protective proceeding may be initiated within the time specified in this section.
 (d) The department or prosecuting attorney is empowered to file petitions in the appropriate court seeking imposition of penalties for violation of this subchapter.
This process is commonly referred to as a "seventy-two hour hold." The current statute does not mention or expressly address the necessity of obtaining a court order to effectuate the seventy-two hour hold. I will note, additionally, that Act 1706 of 2005, § 14 (again, effective August 12, 2005, see fn 2, supra), amends A.C.A. § 12-12-516, by adding a new subsection (e) to provide that:
 Schools, residential facilities, hospitals and other places that a child may be located shall not require a written court order for the Department [of Human Services] to take a seventy-two (72) hour hold under this section, 9-27-313, or § 12-12-516.
In my opinion therefore, in response to your question, the school district policy you have enclosed does not comply with law in certain respects and will need to be revised to ensure compliance with current law and newly-enacted laws that will become effective on August 12, 2005. Again, however, I am not authorized to provide legal advice to individual school districts. The school district in question should confer with its chosen school district counsel to ensure that its policies comply with state law.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: ECW/cyh
[1] The requester inquired about parental rights under20 U.S.C. § 1232g, the "Family Educational Rights and Privacy Act."
[2] For a more recent case involving qualified immunity of school officials in such instance, see Hawley v. Nelson, 968 F.Supp. 1372 (E.D. Mo. 1997), aff'd without opinion, 141 F.3d 1168 (8th Cir. 1998).
[3] Other portions of the policy may be unobjectionable but should be reviewed by the school district with its chosen counsel. The policy cites A.C.A. § 6-18-503 as a "legal reference." Although that statute does require certain notice to be given parents by school officials with regard to certain actions by law enforcement agencies and personnel, it should be noted that it does not address or apply to the actions of DHS officials.
[4] See Op. Att'y Gen. 2005-110 as to the effective date of this Act.